# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### Civil Action No. 3:20-cv-392

| | |
|---|---|
| JOHN ROBERTS, JR. on behalf of himself and all others similarly situated, ) ) ) ) | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| Plaintiff, ) ) | **JURY TRIAL DEMANDED** |
| v. ) ) | |
| COX COMMUNICATIONS, INC., a Delaware Corporation; QUALITY TECHNOLOGIES, INC., a North Carolina corporation; INFINITE COMMUNICATIONS, INC. a Florida corporation; and DONOVAN MARTIN, Individually; THOMAS MCCOLLUM, a/k/a TOMMY MCCOLLUM, an individual ) ) ) ) ) ) ) ) ) ) | |
| Defendants. ) | |

COMES NOW Plaintiff John Roberts, Jr. ("Plaintiff" or "Roberts"), on behalf of himself and all others similarly situated, by and through the undersigned counsel, files this Complaint as follows:

Plaintiff brings this action, on behalf of himself and other similarly situated, to recover unpaid wages, commissions, liquidated damages, and attorneys' fees from Defendants Cox Communications, Inc., Quality Technologies, Inc., Infinite Communications, Inc., Donovan Martin; and Tommy McCollum (collectively, "Defendants"), seeking to recover for Defendants' violations of the Fair Labor Standards Act (hereinafter "FLSA") 29 U.S.C. §§ 201 *et. seq.,* and the North Carolina Wage and Hour Act (hereinafter "NCWHA") N.C. Gen. Stat. §§ 95-25.1 *et. seq.*

1

## NATURE OF THE ACTION

1. This Complaint arises out of Defendants' individual and concerted efforts to deprive the Plaintiff, and those similarly situated, of monies rightfully earned under a scheme that violates North Carolina law, and also violates the FLSA found at 29 U.S.C. 201, *et seq*., and specifically the collective action provision of the FLSA found at section 216(b).

2. Plaintiff, and other similarly situated, worked hours while jointly employed by Defendants for which they either received no compensation, for which they were improperly paid at a rate less than one and-one half times their normal hourly rates, and/or for which they were paid below minimum wage.

3. Defendants' actions, as set forth more fully below, in failing to compensate the Plaintiff, and others similarly situated, and failing to keep records in accordance with the provisions of the FLSA, were willful.

4. As set forth more fully below, Defendants have engaged and continue to engage in a centralized, widespread pattern and practice of FLSA violations, violations of North Carolina law, and intentional schemes designed to undermine and avoid the minimum wage and overtime pay provisions of the FLSA on a systemic, corporate-wide basis.

5. Plaintiff is entitled to recover (i) unpaid minimum wages; (ii) unpaid overtime wages for all hours worked exceeding forty (40) in a workweek, and (iii) statutory penalties, including liquidated damages, pursuant to the FLSA, 29 U.S.C. §§ 201 et seq., specifically 29 U.S.C. §§ 207, 216(b).

6. Plaintiff is further entitled to all unpaid wages, plus interest, liquidated damages, costs and fees and penalties as allowed for Defendants' violations of the NCWHA, N.C. Gen. Stat. §§ 95-25.1 *et. seq.*

2

## THE PARTIES

7.   Plaintiff is a citizen and resident of Mecklenburg County in Charlotte, North Carolina.

8.   Defendant Cox Communications, Inc. ("Cox") is a Delaware corporation licensed to do business in the State of North Carolina, via retailers, advertising, sales, contracts for television programing, and servicing of systems.

9.   Defendant Quality Technologies Inc. ("Quality Technologies")  is a North Carolina corporation with a principal place of business in Charlotte, North Carolina. It also has offices in Florida, Georgia, Kentucky, Louisiana, South Carolina, Ohio and Pennsylvania.

10. Defendant Infinite Communications Inc. ("Infinite Communications") is a Florida corporation doing business in North Carolina with a principal place of business in Duval County, Florida and a registered office in Cary, North Carolina.

11. Defendant Donovan Martin ("Martin") is a citizen and resident of York County, South Carolina and is the chief executive officer and owner of Quality Technologies Inc.  Martin is a part-owner of Infinite Communications.

12. Defendant Tommy McCollum ("McCollum") is a citizen and resident of St. Johns, Florida and is the president, secretary and owner of Defendant Infinite Communications, Inc. along with Martin.

## JURISDICTION AND VENUE

13. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the FLSA, 29 U.S.C. § 201 *et. seq.*

14. Defendants employed Plaintiff and employs/employed others in this judicial district, own and operate a business in this judicial district, and are registered to transact business in the State of North Carolina.

3

15. The claims for violations of the NCWHA are based on the statutory law of the State of North Carolina. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims because they arise out of the same nucleus of operative facts as the FLSA claim.

16. All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness and convenience for the parties.

## ALTER EGO AND VICARIOUS LIABILITY ALLEGATIONS

17. Defendant Martin is the alter ego of Defendant Quality Technologies because Quality Technologies is so operated that it is a mere instrumentality of Martin.

18. On information and belief, Martin maintains complete domination over the finances, policy and business practices of Quality Technologies, such that there is no separation between Martin and Quality Technologies.

19. On information and belief, Martin's control of Quality Technologies is such that it allows him to commit fraud and perpetrate violations of federal and state statutes because Quality Technologies is undercapitalized and Martin uses its assets for his own benefit, treating it as a shell for protection from liability on debts it owes to employees like Plaintiff and others.

20. Defendant McCollum is the alter ego of Defendant Infinite Communications. On information and belief, McCollum maintains complete domination over the finances, policy and business practices of Infinite Communications, such that there is no separation between McCollum and Infinite Communications.

21. On information and belief, McCollum's control of Infinite Communications is such that it allows him to commit fraud and perpetrate violations of federal and state statutes because McCollum is undercapitalized and McCollum uses its assets for his own benefit, treating it as a shell for protection from liability on debts it owes to employees like Plaintiff and others.

4

McCollum has numerous lawsuits against him personally for failing to pay the debts and obligations of his undercapitalized shell company, Infinite Communications.

22. The individual Defendants, and each of them, were and are the agents, servants, employees, joint venturers, and/or partners of each of the corporate Defendants, and were, at all such times, acting within the course and scope of said employment and/or agency; furthermore, that each and every individual Defendant herein, while acting as a high corporate officer, director and/or managing agent, principal and/or employer, expressly directed, consented to, approved, affirmed and ratified each and every action taken by the corporate Defendants, as herein alleged and was responsible in whole or in part for the matters referred to herein.

23. The Defendants, and each of them, are now and/or at all times mentioned in this Complaint were in some manner legally responsible for the events, happenings and circumstances alleged in this Complaint.

24. At all times herein mentioned, Defendants, and each of them, proximately caused Plaintiff and all others similarly situated to be subjected to the unlawful practices, wrongs, complaints, injuries and/or damages alleged in this Complaint.

25. At all times mentioned in this Complaint, concurred with, contributed to, approved of, aided and abetted, condoned and/or otherwise ratified, the various acts and omissions of each and every one of the other Defendants in proximately causing the injuries and/or damages alleged in this Complaint.

## JOINT EMPLOYER ALLEGATIONS

26. The "Contract for Cable Installation Services" ("Installation Contract") Defendants sought to induce Plaintiff to sign was sent from "Human Resource <hr@qualitytechonologiesinc.com." The Installation Contract has the logo and name of Quality

5

Technologies, Inc. on the first page and states the agreement is between Quality Technologies, Inc. as "Contractor" and Plaintiff as "Subcontractor."

27. The Installation Contract suggests there is a "principal" who engages the Contractor and that principal is identified as Cox Communications, calling Cox Communications the "System."

28. The Installation Contract states: "Subcontractor should always remember they are an "indirect representative" of the System. . ." The System in this case is Cox Communications.

29. The Installation Contract states that the "System" Subcontractor represents "usually requests that work is to be started between 6:45 AM and 7:00 AM…"

30. Quality Technologies and Infinite Communications recruited Plaintiff specifically to work on the project with Cox and Plaintiff worked on no other project except those with Cox. His work was an integral part of all three Defendants' business objective.

31. Although Quality Technologies is a North Carolina corporation with its principal place of business in North Carolina, the Installation Agreement has a venue provision in Duval County, Florida. Infinite Technologies is a Florida corporation with its principal place of business in Duval County, Florida.

32. In the same email from Quality Technologies, Plaintiff also received a "Company Identification Badge Policy" that states that the badge is the property of Cox Communications and stating when employment terminates, the badge must be returned to "Quality Technologies Inc.(Cox Communications)" to be destroyed. The policy also states that Plaintiff and other employees would have to pay Cox Communications $150 to obtain a replacement badge.

33. Plaintiff picked up his badge at the Defendant Cox Communications' location in Virginia. A Cox employee took a picture of Plaintiff to put on the badge. Plaintiff was instructed to pick up his badge by a Cox Communications employee.

34. Plaintiff's badge was labeled "Cox Communications" in large letters and then below that in smaller font "CONTRACTOR" and then below that in even smaller font "Infinite Communications."   It did not say Infinite was an "Authorized Vendor for Cox Communications."

35. Cox required Plaintiff and other technicians to put a magnet on their personal vehicle that said "COX" in very large font and then below it, in smaller letters, it said "Contractors."

36. Cox Communications personnel instructed Plaintiff to upload two apps to his cell phone. One of these apps had a GPS tracking device and Cox Communications could, and did, monitor where Plaintiff was at any given time.

37. Plaintiff and other technicians also received training directly from employees of Cox Communications at its corporate location.

38. Sometimes, Cox Communications would contact Plaintiff directly to tell him to go to a different job location when it noticed Plaintiff was at a particular location based on the app Cox Communications required him to upload to his cell phone.

39. Cox Communications assigned Plaintiff a "technician number" and made it very clear that each technician number was specific to each worker and was not a "placeholder." Plaintiff was required to submit to Cox Communications the last four digits of his social security number to receive the badge.

40. Cox Communications personnel sometimes contacted Plaintiff directly to instruct him to log on to the app or remind him he had a job open on the app that he had to close out of.

41. Plaintiff often spoke or texted directly with Cox Communications personnel about customer complaints or issues. When Plaintiff needed to return to a customer's home, he was

7

sometimes contacted directly by Cox Communications to instruct him to return and the tasks he needed to do.

42. Cox would suspend or terminate technicians and installers who failed to log in on time.

43. Cox assigned each job to Plaintiff and other technicians and installers and they had no choice but to accept the assignment Cox gave them.

44. Cox Communications set up the point system that dictated how Plaintiff would get paid. If Plaintiff was directed to a residence to perform a job that Cox Communications designated a certain amount of "points" and it turned out the job should be for more points than Cox Communications designated, then Plaintiff often called Cox Communications directly to get approval from Cox Communications to increase the number of points assigned.

45. Sometimes Plaintiff contacted personnel at Quality Technologies/Infinite Communications, but that person would simply contact Cox Communications to get authority to increase the point designation originally made by Cox Communications.

46. The Cox Communications employee who instructed Plaintiff and other technicians to go to Cox Communications to get their badge is Kevin Jackson.

47. Jackson's Linked-In profile states he has been employed by Cox Communications since March of 2014. At the time of this filing, the link to Jackson's profile is:

https://www.linkedin.com/in/kevin-jackson-2305a6b8/

48. A search of Cox Communications' Linked-In profile shows Jackson as an employee of Cox Communications. At the time of this filing, the link to the Cox profile is:

https://www.linkedin.com/company/Cox Communications-communications/people/?facetGeoRegion=us%3A572&keywords=kevin%20jackson

8

49. But the email address Cox Communications used to communicate with Plaintiff is:

"kevin.jackson@qualitytechnologies.com."

50. The website for Quality Communications (which at the time of this filing is:

(https://www.qualitytechnologiesinc.com/) states as follows:

> Here at Quality we strive to please our
> employees and our customers. We will
> never leave you without a smile.
> Kevin Jackson
> Regional Manager of Quality
> Technologies Inc

51. Kevin Jackson is listed as the "Chief Financial Officer" for Quality Technologies in the Business Corporation Annual Report filed by Quality Technologies with the North Carolina Secretary of State on February 20, 2019.

52. Kevin Jackson, a Cox Communications employee who used a Quality Technologies email address to communicate with Plaintiff and who is described as the Regional Manager of Quality Technologies, also texted Plaintiff directly, to provide Cox Communications identification codes, obtain Plaintiff's email address, provide work locations and inquire about when Plaintiff would be returning to Virginia to work.

53. When Plaintiff was having trouble getting Martin to take his calls, Martin texted, "Not to be an ass hole John you have two local managers up there *with you on a day to day task*." On information and belief, these "two local managers" who were there with Plaintiff on a "day to day task" are both Cox Communications employees. One of them was Kevin Jackson.

54. Cox Communications instructed Infinite Communications and/or Quality Technologies to process "charge-backs" against Plaintiff's wages.

55. Infinite Communications website vows to be the best "business partner of choice" for all of its clients, one of which is Cox Communications.

56. On information and belief, Defendant Martin made all decisions on a daily basis regarding pay policies and exerted financial and operative control over Quality Technologies and is therefore individually liable under the FLSA and North Carolina State laws.

57. On information and belief, Defendant McCollum made all decisions on a daily basis regarding pay policies and exerted financial and operative control over Infinite Communications and is therefore individually liable under the FLSA and North Carolina State laws.

58. The facts alleged above demonstrate that Cox Communications, Quality Technologies and Infinite Communications determined, shared, or allocated the ability to direct, control, or supervise Plaintiff and other employees, either by direct or indirect means.

59. The facts alleged above demonstrate that, formally or as a matter of practice, Cox Communications, Quality Technologies and Infinite Communications jointly determined, shared, or allocated the power to—directly or indirectly—hire or fire the worker or modify the terms or conditions of the worker's employment.

60. The facts alleged above demonstrate the permanency and duration of the relationship between Cox Communications, Quality Technologies and Infinite Communications.

61. The facts alleged above demonstrate that, through shared management or a direct or indirect ownership interest, Cox Communication, Quality Technologies and Infinite Communications controls, are controlled by, or are under common control with one another.

62. The facts alleged above demonstrate that the work is performed on a premises owned or controlled by one or more of the three - Cox Communications, Quality Technologies and Infinite Communications - independently or in connection with one another.

10

63. The facts alleged above demonstrate that formally or as a matter of practice, Cox Communications, Quality Technologies and Infinite Communications jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll; providing workers' compensation insurance; paying payroll taxes; or providing the facilities, equipment, tools, or materials necessary to complete the work.

64. Further, the facts alleged above demonstrate that Cox Communications, Quality Technologies and Infinite Communications were part of a single enterprise and unified operation that had a common business purpose.

## COVERAGE ALLEGATIONS

65. At all times hereinafter mentioned, Defendants have been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

66. At all times hereinafter mentioned, Defendants have been an enterprise within the meaning of Section 3(r) of the FLSA 29 U.S.C. § 203(r).

67. At all times hereinafter mentioned, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that the enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that the enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

68. At all times hereinafter mentioned, Plaintiff has been an employee within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

11

69. At all times hereinafter mentioned, Plaintiff was an individual employee who was engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

70. At all times hereinafter mentioned, Defendants have been an employer within the meaning of Section 95-25.2(5) of the NCWHA, N.C. Gen. Stat. §§ 95-25.2(5).

71. At all times hereinafter mentioned, Plaintiff was an employee within the meaning of Section 95-25.2(4) of the NCWHA, N.C. Gen. Stat. §§ 95-25.2(4).

## STATEMENT OF FACTS

72. Plaintiff, and others similarly situated, are current and former contractors employed by Defendants, who were misclassified as an Independent Contractor during the relevant time period.

73. At all relevant times, Plaintiff, and those similarly situated were employed by Defendants as technicians and installers.

74. As technicians and installers, Plaintiff, and those similarly situated regularly made house calls to customers in order to install cable equipment and related products referred to as "job assignments." Plaintiffs, and those similarly situated, would complete several job assignments per day, each of which could last from approximately an hour to several hours.

75. Plaintiff and others similarly situated were paid a set amount per the number of "points" accumulated based on the type of job assignments.

76. Plaintiff, and others similarly situated regularly worked over 40 hours in a workweek in order to complete all of their job assignments. Plaintiff typically worked at least 60 hours per week. He started at 6:45 AM and finished working between 9:00-10:00 PM.

12

77. Defendants did not pay Plaintiff, and others similarly situated, for all hours worked in order to avoid overtime payments. Defendants, through the guise of the pay-per-point/unilateral charge-back scheme, denied Plaintiff, and others similarly situated, rights guaranteed them under the FLSA and North Carolina law.

78. Defendants have failed and continue to fail to meet the requirements of North Carolina law and the FLSA by instituting policies and engaging in practices that deprive Plaintiff, and others similarly situated,  of wages earned, and violate the minimum wage, overtime pay and record keeping provisions of the FLSA. Specifically, Defendants violated these provisions by, among other things:

    a.   Requiring, suffering, and/or permitting Plaintiff, and others similarly situated, to begin working prior to their first job assignments and failing to record or pay wages for the time worked prior to the start of their first job assignment, including, but not limited to, requiring Plaintiff, and others similarly situated, to report to the company office before they went to their first job assignment and requiring employees to call from their personal phones to receive the job assignments for the day;

    b.   Requiring, suffering, and/or permitting Plaintiff, and other similarly situated, to continue working after they completed all of their job assignments by, among other things, requiring Plaintiff, and others similarly situated, to clean out their vehicles and by failing to record or pay wages for the time worked subsequent to the end of their shifts;

    c.   Requiring, suffering, and/or permitting Plaintiff, and others similarly situated, to work hours "off the clock" throughout their work day by failing to record or pay

13

wages for travel time between job assignments and by engaging in a policy or practice of reducing hours on Plaintiffs' time records;

d. Violating the record-keeping provisions of the FLSA by failing to properly record hours worked;

e. Failing to properly calculate the overtime rate by, among other things, failing to record or pay wages for all hours worked and failing to pay overtime wages at one-and-one-half times their regular rate of pay as required by law;

f. Conspiring, acting as joint employers, and/or acting as successors in interest to effectuate a "charge-back" scheme designed to harm the Plaintiff, and those similarly situated, by: 1) charging the installers back (deducting from their check) more money than they earned for the job assignment, effectively making a "profit" by unilaterally taking improper and unjustified deductions from installers' pay; 2) charging Plaintiff, and others similarly situated, back for occurrences unrelated to quality of the work they originally performed such as homeowner assistance or equipment failures; 3) withholding pay illegally and in violation of FLSA; and 4) improperly taking deductions from paychecks without just cause.

79. Defendant Cox Communications is liable for its actions in helping to set up a bogus, unfunded or "judgment proof" entity or entities as "Contractors" in an attempt to circumvent the provisions of the FLSA and North Carolina law.

80. Cox Communications, along with Quality Communications and Infinite Technologies, has purposefully exploited Plaintiff, and those similarly situated, by delaying or withholding

14

their payment for services performed, making unilateral and unwarranted deductions from those checks and then hiding behind bogus, unfunded entities as a defense to its actions.

81. Plaintiff, and those similarly situated, were and/or are subject to the policies, conduct and practices of Defendants set forth above and, as a result, their number of hours worked as recorded by Defendants was far less than their actual number of hours worked.

82. Pursuant to Defendants' policies and practices, Defendants have failed and continue to fail to compensate Plaintiff, and those similarly situated, for wages earned and pay Plaintiff, and those similarly situated, the required minimum wage and overtime premium pay of one and one-half times their regular rate of pay for all hours worked in excess of a 40 hour work week.

83. In addition to failing to compensate Plaintiff, and those similarly situated, for all hours worked, Defendants withheld uniform costs from Plaintiffs' paychecks, and improperly "charged" Plaintiff, and those similarly situated, for the failures of Defendants' equipment.

84. Defendants retain and exercise significant control over the details of the work of Plaintiff, and others similarly situated, including, but not limited to:

    a. Subjecting Plaintiff, and others similarly situated, to discipline and termination for failure to meet certain performance requirements;

    b. Dictating the hours Plaintiff, and others similarly situated, were to spend working for Defendants, such as texting: "Everybody needs to go into Penguin and close out their jobs." and "Good morning everyone start logging into your jobs.";

    c. Providing Plaintiff, and other similarly situated, with a badge identifying Cox Communications and Infinite Communications as the "Contractor."

    d. Requiring Plaintiff, and others similarly situated, to "present" to customers as an employee of Cox Communications and/or Infinite Communications;

e.   Requiring Plaintiff, and others similarly situated, to use Defendants' vendors for all travel arrangements;

f.   Threatening Plaintiff, and others similarly situated, with termination if they did not attend a company meeting -- "If you are not there you are terminated. Please turn in your stuff. I need confirmation from each person. Thank you."

g.   Prohibiting Plaintiff, and others similarly situated, from performing any tasks, duties or other activities for any other business enterprise.

85. Plaintiff, and others similarly situated,  had no control over the rates charged to Defendants' customers, nor did they have control over their own compensation rates.

86. Defendants provided Plaintiffs, and others similarly situated, with equipment to perform job responsibilities, including, but not limited, to a personal computer and wireless routers.

87. Defendants provided detailed training to Plaintiff, and others similarly situated, on job duties that are an integral part of Defendants business.

88. Defendant required Plaintiff, and others similarly situated, to pay all expenses but required prior approval of expenses.

89. The degree of skill required for the work was minimal -- the duties of Plaintiff, and others similarly situated, included installation of telecommunications cable.

90. Plaintiff, and others similarly situated, were not engaged in a distinct occupation or business apart from his efforts on behalf of Defendants. Defendants sought to have Plaintiff, and others similarly situated, sign a contract with a non-solicitation clause that extended for 12 months after they stopped working for Defendants.

16

91. Defendants issued payments to Plaintiff, and others similarly situated, as individuals, not as business entities. Plaintiffs, and others similarly situated, did not possess business licenses to perform the work Defendants hired them to perform.

92. Defendants improperly classified Plaintiffs, and others similarly situated, as "Independent Contractors" rather than W-2 employees pursuant to the FLSA and the NCWHA.

93. By misclassifying Plaintiff, and others similarly situated, as "Independent Contractors." Defendants have sought to avoid various duties and obligations owed to employees under the NCWHA and the FLSA, including but not limited to: (a) the duty to pay minimum wage for all hours worked; (b) the duty to pay wages due on termination; (c) the duty to pay employment taxes and FICA obligations, and other legal obligations.

94. Defendants' practices also require their purported "Independent Contractors," to work in excess of forty (40) hours per week without paying them proper overtime compensation as required by federal and state wage laws.

95. Moreover, by misclassifying Plaintiffs, and others similarly situated, as "Independent Contractors," Defendants have forced Plaintiffs, and others similarly situated, to bear many of the costs of running Defendants' business, which were then unlawfully deducted from the pay of Plaintiff, and others similarly situated.

96. As a result of misclassifying Plaintiff, and others similarly situated as "Independent Contractors" and constructing pay packages that did not compensate them for all work performed, Defendants have regularly failed to compensate Plaintiff, and others similarly situated, for all work performed and for all hours worked.

97. As a result of misclassifying Plaintiff, and others similarly situated as "Independent Contractors," and constructing pay packages that did not compensate them for all work

17

performed, Defendants suffered or permitted Plaintiff, and others similarly situated, to work portions of the day, for which Defendants failed to compensate.

98. Plaintiff performed his job in a satisfactory fashion and up to or exceeding the expectations of Defendants from September 16, 2019 through October 11, 2019.

99. Despite his qualifications and performance, Plaintiff was not paid for his hours worked, nor was Plaintiff reimbursed for his out-of-pocket job related travel expenses.

100. Plaintiff notified Defendants of his concerns via text message on or about November 14, 2019.

101. Defendants did not take action to correct their unlawful pay practices in response to Plaintiff's complaints. Instead, Defendants contended Plaintiff was not owed any money because he did not sign the initial "contract."

102. Defendants withheld pay from Plaintiff and other technicians and installers in order to keep them working for Defendants without pay. Because Defendants lured Plaintiff and others to Virginia to work away from their homes and put them up in a hotel. By withholding pay, Defendants prevented these workers from returning home and essentially rendered them indentured servants.

103. The Installment Contract provided that the Subcontractor was required to give the Contractor 60-days' notice prior to terminating the contract. It further provides that, if the Subcontractor fails to give 60-days' notice, the Contractor would "charge back" four weeks of invoices.

104. In this way, Defendants forced Plaintiff and others to work without pay and if they left the job due to the failure to pay, Defendants would claim they no longer had to pay

Plaintiff or the others for the first four weeks of pay. This is precisely the threat Defendants made to Plaintiff when he terminated his employment within the first 60 days.

105.     In text messages, Defendants repeatedly tell Plaintiff that he must "read his contract" because he is not entitled to any payments. Defendants threatened not to pay Plaintiff unless he agreed to return to work.

106.     When Defendants finally paid Plaintiff, they made unlawful deductions from his pay that Plaintiff did not consent to.

107.     Defendants' conduct was willful and without justification and was done in reckless disregard of the rights of Plaintiff, and others similarly situated.

## COLLECTIVE ACTION FOR VIOLATIONS OF THE FLSA

108.     Defendants have violated the provisions of the FLSA, resulting in damages to Plaintiff, and those similarly situated, in the form of unpaid wages, incurred and incurring costs and reasonable attorney's fees.

109.     As a result of the minimum wage, overtime pay and record keeping violations of the FLSA, Plaintiff, and those similarly situated have suffered damages by failing to receive their lawful wages during their tenure of employment with Defendants. In addition to the amount of unpaid wages owing to the Plaintiff, and those similarly situated, they are also entitled to an additional amount of liquidated damages pursuant to 29 U.S.C. 216(b) and/or prejudgment interest.

110.     Plaintiff, and those similarly situated are also entitled to an award of attorneys' fees pursuant to 29 U.S.C. 216(b).

111.     Pursuant to 29 U.S.C. 216(b), attached to and filed with this Petition as Exhibit A is the Consent to Join Collective Action form signed by the Representative Plaintiff.

112.     Defendants' actions in failing to compensate the Plaintiff, and those similarly situated, in accordance with the provisions of the FLSA were willful and not in good faith.

113.     There are numerous other similarly situated employees and former employees of Defendants who have been improperly compensated in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Specifically, all employees and former employees of Defendants who have been employed by the Defendants as technicians, installers or field trainers in any facility owned and/or operated by Defendants in the State of North Carolina should receive notice and the opportunity to join the present lawsuit.

## CLASS ACTION FOR VIOLATIONS UNDER NORTH CAROLINA LAW

114.     Plaintiff brings this Class Action pursuant to Federal Rule of Civil Procedure 23, on behalf of himself and a Class as defined below: "All persons who have performed installation and service of Cox Communications, Inc. cable systems through Quality Technology, Inc. and/or Infinite Communications, Inc. for the past three years and have been deprived of wages for work performed" (the "Class").

115.     Defendants conspired to misclassify Plaintiff and others similarly situated and then pay them on a "point system" that did not result in payment of at least minimum wage for all hours worked and resulted in Plaintiff and others similarly situated working more than 40 hours per week every single week.

116.     Plaintiff and every other technician he knew who worked for Defendants, began work at 6:45 AM, as Cox demanded and required them to do, and then worked at least until 9:00 PM but sometimes later, every single day, six days per week.

20

117.     Defendants have conspired, acted as joint employers, and/or acted as successors in interest to effectuate a "charge-back" scheme designed to harm Plaintiffs by: 1) charging the Plaintiffs back (deducting from their check) more money than they "earned" for the job assignment; 2) charging the Plaintiffs back for occurrences unrelated to quality of work they originally performed; 3) withholding pay illegally and in violation of North Carolina law; 4) and improperly taking unilateral deductions from paychecks without just cause.

118.     Defendants have regularly made unilateral deductions from payments to their employees for a variety of reasons not allowed under N.C. Gen. Stat. §§ 95-25.1 et. seq. and have otherwise failed to pay wages under Gen. Stat. §§ 95-25.6, 95-25.7 and 95-25.13.

119.     **Numerosity.** The Class is composed of thousands of persons geographically dispersed throughout the State of North Carolina and other states, the joinder of whom, in one action, is impractical. The Class is ascertainable and identifiable. Membership in the Class can be determined easily. Defendants can determine the identity of all Class Members from their own records.

120.     **Commonality**. Questions of law and fact common to the Class exist as to all Members of the Class and predominate over any questions affecting only individual Members of the Class. These common legal and factual issues include the following:

    a.   Whether Defendants misclassified Plaintiff, and others similarly situated, as independent contractors so they could avoid paying them minimum wage for all hours worked and avoid paying them an overtime premium for all hours worked over 40 hours in a work week;

    b.   Whether Plaintiff, and others similarly situated, worked hours for which they were not paid at least minimum;

c.  Whether Plaintiff, and others similarly situated, worked more than 40 hours per week in any given work week;

d.  Whether Plaintiff, and others similarly situated, were not paid an overtime premium when they worked more than 40 hours per week;

e.  Whether Defendants deprived Plaintiff, and others similarly situated of rights bestowed upon individuals who work for companies doing business in North Carolina by making unlawful deductions from paychecks of employees in violation of North Carolina Wage and Hour law;

f.  Whether Defendants conspired to deny Plaintiff, and others similarly situated, their rights as employees by a fraudulent scheme designed to convince them they were "Independent Contractors";

g.  Whether Plaintiff, and others similarly situated, are entitled to recover compensatory, exemplary, punitive and/or other damages as a result of Defendants' unlawful conduct;

h.  What is the proper mechanism for assessing and awarding damages and administering relief to the Plaintiffs, including the relief to reduce the threat of future harm to the Plaintiff, and others similarly situated;

i.  The nature and extent of compensatory damages to the Plaintiff, and others similarly situated;

j.  How compensatory damages should be allocated to the Plaintiff and others similarly situated; and

k.  How responsibility for damages should be allocated amongst the Defendants.

121.    **Typicality.** Plaintiff's claims are typical of the claims of the Plaintiff Class, as all such claims arise out of Defendants' uniform course of wrongful conduct complained of herein**.**

122.    **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the Members of the Class and has no interest antagonistic to those of the Class. Plaintiffs has retained counsel experienced in complex litigation and labor and employment law matters.

123.    **Predominance and Superiority**. This Class Action is appropriate for certification because questions of law and fact common to the Members of the Class predominate over questions affecting only individual Members, and a Class Action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all Members of the Class is impracticable. Should individual Class Members be required to bring separate actions, this Court and courts throughout the State of North Carolina would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this Class Action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single Court.

## COUNT I

### (Violation of Fair Labor Standards Act)

124.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

125. At all relevant times herein, Plaintiff, and others similarly situated, were entitled to the rights, protections and benefits provided under the FLSA, 29 USC §§ 201 et. seq.

126. Defendants violated the FLSA by misclassifying Plaintiff, and others similarly situated, as independent contractors when they were actually employees.

127. Defendants violated the FLSA by not paying Plaintiff, and others similarly situated, for all hours worked and not paying at least minimum wage for all hours worked.

128. Defendants violated the FLSA by failing to pay and properly calculate overtime. In the course of perpetrating these unlawful practices, Defendants have also willfully failed to keep accurate records of all hours worked by their employees.

129. Defendants failed to compensate Plaintiff, and those similarly situated, at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a work week, and therefore, Defendants have violated, and continue to violate, the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. § 207(a)(1).

130. Defendants also failed to properly classify Plaintiff, and others similarly situated, as employees, and thus failed to pay employment taxes on behalf of them, including FICA, Medicare, Social Security, state and federal income taxes.

131. Plaintiff, and others similarly situated, are victims of uniform and company-wide compensation policies, procedures, and practices.

132. Defendants did not make a good faith effort to comply with the FLSA with respect to their compensation of Plaintiff and others similarly situated.

133. Defendants' violations of the FLSA, as described in this Complaint, have been willful and intentional, and a three-year statute of limitations applies to the claims of Plaintiff, and others similarly situated, pursuant to 29 U.S.C. § 255.

134.     As a result of Defendants' violations of the FLSA, Plaintiff, and others similarly situated, have suffered damages by being denied overtime wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. 201, et seq.

## COUNT II

### (Violation of North Carolina Wage and Hour Act)

135.     Plaintiff realleges and incorporates by reference the allegations set forth in the above paragraphs.

136.     Defendants maintained a policy and practice of suffering or permitting Plaintiff, and others similarly situated, to work without paying promised and earned wages for all hours worked in violation of N.C. Gen. Stat. §§ 95-25.6, 95-25.7 and 95-25.13.

137.     Defendants violated N.C. Gen. Stat. §§ 95-25.6 by failing to pay Plaintiff, and others similarly situated, all promised and earned wages and overtime payments on the employee's regular payday for all hours worked.

138.     Defendants further violated North Carolina law by making unauthorized deductions from the wages of Plaintiff and others similarly situated.

139.     Defendants' violation of the NCWHA was willful.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and others similarly situated, demands and prays for:

a)     An Order pursuant to Section 16(b) of the FLSA finding Defendants liable for unpaid back wages and for liquidated damages;

b)      An Order pursuant to the NCWHA finding Defendants liable for unpaid back wages and liquidated damages;

c)      An Order awarding the costs of this action;

d)      An Order awarding reasonable attorneys' fees;

e)      A Declaration and finding by the Court that Defendants willfully violated provisions of the FLSA by failing to comply with the minimum wage and overtime requirements of the FLSA;

f)      An Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law; and

g)      An Order granting such other and further relief as may be necessary and appropriate.

## JURY TRIAL DEMAND

Plaintiff, on behalf of himself and others similarly situated, demands a trial by jury for all issues of fact.

*/s/ L. Michelle Gessner*
L. Michelle Gessner, NCSB#26590
GESSNERLAW, PLLC
602 East Morehead Street
Charlotte, North Carolina 28202
Tel: (704) 234-7442; Fax: (980) 206-0286
Email: michelle@mgessnerlaw.com

*Attorney for Plaintiff and Putative Class Members*