| | |
|---|---|
| **John Roberts Jr.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **ORDER and ORDER TO SHOW CAUSE** |
| ) | |
| **Cox Communications, Inc.** ) | |
| **Donovan Martin** ) | |
| **Quality Technologies, Inc.** ) | |
| **Thomas McCollum** ) | |
| **Infinite Communications, Inc.,** ) | |
| ) | |
| **Defendants.** ) | |

THIS MATTER is before the Court on Motions to Dismiss for Lack of Jurisdiction and for Failure to State a Claim submitted by Defendants Cox Communications, (Doc. No. 17), Infinite Communications and Thomas McCollum (Doc. Nos. 18, 22). Each Motion has been fully briefed by the parties, and all are ripe for review. For the reasons stated herein, the Court hereby GRANTS IN PART AND DENIES IN PART AS MOOT Defendant Cox's Motion to Dismiss (Doc. No. 17). The Court GRANTS Defendants Infinite and McCollum's Motion to Dismiss for Lack of Jurisdiction (Doc. No. 18) and DENIES AS MOOT Defendants Infinite and McCollum's Motion to Dismiss for Failure to State a Claim (Doc. No. 22).

Also before the Court, *sua sponte*, is the status of this case for Plaintiff's claims against Defendants Donovan Martin and Quality Technologies, Inc. An appropriate SHOW CAUSE order follows here.

### I. BACKGROUND

Plaintiff filed the instant suit on July 17, 2020, alleging various violations of the federal Fair Labor Standards Act ("FLSA") and North Carolina's Wage and Hour Act ("NCWHA"). (Doc. No. 1, p. 1). He purports to bring this action on behalf of himself of others similarly situated who

have been allegedly underpaid by five named Defendants.[1] Id. at p. 2. Three of the named Defendants have moved for dismissal, challenging both this Court's jurisdiction over them and the sufficiency of the Complaint. The following background provides a summary of allegations and causes of actions as set forth in the Complaint.

Plaintiff is domiciled in Mecklenberg County, North Carolina. Id. at p. 3. Defendant Cox Communications ("Defendant Cox") is incorporated in Delaware and has its principal place of business in Georgia.[2] (Doc. No. 1, p. 3; see also (Doc. No. 17-1, p. 2). Defendant Infinite Communications ("Defendant Infinite") is both incorporated in and has its principal place of business in Florida and maintains an office in Cary, North Carolina. Id. Defendant Tommy McCollum ("Defendant McCollum") is domiciled in Florida and is the alleged President of Defendant Infinite Communications. Id.

At the outset, Plaintiff sets forth several allegations to establish a basis for individual liability against Defendants Martin and McCollum and to establish a basis for personal jurisdiction over Defendants Cox and Infinite. See id. at pp. 4-11. Specifically, Plaintiff alleges Defendant McCollum is the "alter ego" of Defendant Infinite. Id. at pp. 4-5. With respect to establishing personal jurisdiction, Plaintiff alleges Defendants Cox and Infinite are joint employers such that

---

[1] Two Defendants have not yet appeared in this matter. With respect to Defendant Quality, Plaintiff filed an affidavit of service indicating Defendant Quality was served on September 3, 2020. (Doc. No. 29). Defendant Quality has failed to answer or otherwise respond, and Plaintiff has thus far failed to move for an entry of default. With respect to Defendant Martin, Plaintiff filed a Motion for Extension of Time for Service of Process on October 8, 2020, (Doc. No. 36), which was granted the same day. On October 31, 2020, Plaintiff initiated Service by Publication on Defendant Martin. (Doc. No. 37) because Plaintiff's initial attempt to effectuate service by mail failed as did subsequent attempts to effectuate service personally with a process server. Id. The affidavit submitted by Plaintiff to support service by publication indicated Defendant Martin was in Puerto Rico, (Doc No. 36-2, p. 2), but Plaintiff completed service by publication in a South Carolina newspaper. (Doc. No. 37).

[2] The Complaint does not allege that Defendant Cox has a principal place of business; it only alleges Defendant Cox's state of incorporation and that it is "licensed" to do business in North Carolina. As such, the Court refers to the uncontradicted information provided in Defendant Cox's Memorandum in Support of its Motion to Dismiss to determine where Defendant Cox has its principal place of business.

they "were part of a single enterprise and unified operation that had a common business purpose." Id. at pp. 5-11.

Turning to the substantive allegations, Plaintiff brings this action on behalf of himself and others similarly situated.[3] Id. at p. 12. Plaintiff alleges Defendants provided him with an Installation Contract for work as a "technician[] and installer[]", id. at pp. 5, 12, which he ultimately did not sign. (Doc. No. 30, p. 4). His job responsibilities allegedly included making "house calls to customers in order to install cable equipment and related products." (Doc. No. 1, p. 12). Plaintiff alleges each installation job would take between one and several hours to complete, and he regularly worked roughly 60 hours per week. Id. Plaintiff alleges he was not paid for all hours worked and that Defendants instituted polices and engaged in practices to "deprive Plaintiff of wages earned, and [to] violate the minimum wage, overtime pay and record-keeping provisions of the FLSA." Id. at p. 13. Plaintiff alleges such policies and practices included "requiring Plaintiff to report to the company office before [going] to [the] first job assignment;" "requiring Plaintiff . . . to continue working" after finishing a job assignment; "requiring Plaintiff . . . to work hours 'off the clock';" and "improperly taking deductions from paychecks without just cause." Id. at pp. 13-14.

Plaintiff also alleges Defendants have misclassified Plaintiff as an Independent Contractor to "avoid various duties and obligations owed to employees under the NCWHA and FLSA" Id. at p. 17. As a result of the alleged misclassification, Plaintiff contends "Defendants have regularly failed to compensate Plaintiff . . . for all work performed and for all hours worked." Id. After roughly two months of working for Defendants, Plaintiff allegedly notified Defendants via text message of his concerns about being underpaid. See id. at p. 18. Defendants allegedly did not "take

---

[3] There are no other plaintiffs yet identified; accordingly, for purposes of this Order, the Court sets forth the factual allegations with respect to the named Plaintiff only.

3

any action to correct their unlawful pay practices," and continued to withhold pay from Plaintiff and others. Id. Plaintiff alleges that, "[b]ecause Defendants lured Plaintiff and others to Virginia to work away from their homes" and withheld pay, Defendants essentially "prevented these workers from returning home and . . . rendered them indentured servants." Id. Because of these allegedly unlawful practices, Plaintiff terminated his employment within the first 60 days, and when Defendants "finally paid Plaintiff, they made unlawful deductions from his pay." Id. at p. 19. Plaintiff subsequently commenced the instant action. Defendants Cox, Infinite, and McCollum have filed Motions to Dismiss for Lack of Jurisdiction and Failure to State a Claim. (Doc. Nos. 17, 18, 22). All such motions are ripe and the Court addresses them herein.

## II. STANDARD OF REVIEW

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff ultimately bears the burden of proving to the district court judge the existence of jurisdiction over the defendant by a preponderance of the evidence[.]" New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005) (citing Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)). However, "[w]hen a district court considers a question of personal jurisdiction based on the contents of a complaint and supporting affidavits, the plaintiff has the burden of making a prima facie showing in support of its assertion of jurisdiction." Universal Leather, LLC v. Koro Ar, S.A., 773 F.3d 553, 558 (4th Cir. 2014) (citation omitted). In evaluating whether the plaintiff here has met this burden, the court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014) (quoting Combs, 886 F.2d at 676). Indeed, the plaintiff "need not present evidence in making a prima facie case to oppose a motion to dismiss," and "[m]ere allegations are sufficient"

4

to establish personal jurisdiction at the pleading stage. Dowless v. Warren–Rupp Houdailles, Inc., 800 F.2d 1305, 1307–08 (4th Cir.1986).

To establish the court's exercise of personal jurisdiction over a non-resident defendant, the plaintiff's allegations must establish that two conditions have been satisfied. "First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements." Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001).

North Carolina's long-arm statute provides for personal jurisdiction over any validly-served defendant who "is engaged in substantial activity within this State, whether such activity is wholly interstate, intrastate, or otherwise," or whose "act or omission" gave rise to an "action claiming injury to person or property within or without this State." N.C. Gen. Stat. Ann. §§ 1-75.4(1)(d), 1-75.4(3). North Carolina law holds that these provisions "permit[ ] the exercise of personal jurisdiction over a defendant to the outer limits allowable under federal due process." Universal Leather, 773 F.3d at 558; see also Dillon v. Numismatic Funding Corp., 231 S.E.2d 629, 630 (N.C. 1977). Thus, since the long-arm statute "extends personal jurisdiction to the outer bounds of due process, the two-prong test collapses into a single inquiry." Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co., 682 F.3d 292, 301 (4th Cir. 2012). The court must consider "the single question whether [plaintiff] has made a prima facie showing that [defendants] had sufficient contacts with North Carolina to satisfy constitutional due process." Universal Leather, 773 F.3d at 559; see also A.R. Haire, Inc. v. St. Denis, 625 S.E.2d 894, 899 (N.C. App. 2006).

5

The Due Process Clause permits the court to exercise personal jurisdiction over a nonresident defendant through either of two independent avenues. "The first path is specific jurisdiction, which may be established if the defendant's qualifying contacts with the forum state also constitute the basis for the suit. The second path is general jurisdiction, which requires a more demanding showing of continuous and systematic activities in the forum state." Universal Leather, 773 F.3d at 559 (citations and internal quotation marks omitted); see also Tire Eng'g, 682 F.3d at 301.

The Supreme Court has held that a District Court may exercise specific personal jurisdiction over a defendant only if the defendant has sufficient "minimum contacts" with the forum state, such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945). The test relies on "the concept that a corporation that enjoys the privilege of conducting business within a state bears the reciprocal obligation of answering to legal proceedings there." Id. On the other hand, it aims to protect defendants from being "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). Accordingly, specific personal jurisdiction "requires only that the relevant conduct have such a connection with the forum state that it is fair for the defendant to defend itself in that state." CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 292 n. 15 (4th Cir. 2009); see also World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 310, 317–18 (1945). The "minimum contacts" analysis "looks to the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there." Walden v. Fiore, 134 S. Ct. 1115, 1122–23 (2014).

In assessing a defendant's contacts with the forum state, the court does "more than formulaically count contacts, instead taking into account the qualitative nature of each of the

defendant's connections to the forum state." Tire Eng'g, 682 F.3d at 301. For example, the defendant's conduct "must be directed at the forum state in more than a random, fortuitous, or attenuated way." CFA Inst., 551 F.3d at 293 (quoting ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 625 (4th Cir. 1997)). Rather, it must "amount to a surrogate for presence and thus render the exercise of sovereignty just." Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 277–78 (4th Cir. 2009) (quoting ESAB Group, 126 F.3d at 623). The defendant's actions must give him "fair warning that a particular activity may subject [him] to the jurisdiction of a foreign sovereign." Burger King, 471 U.S. at 472 (internal quotation marks omitted).

The Fourth Circuit has synthesized these various considerations into a three-part test for the due process requirements of exercising specific personal jurisdiction. This Court considers: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." Consulting Eng'rs, 561 F.3d at 278 (quoting ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002)).

To establish specific personal jurisdiction, constitutional due process first requires that the defendant have "purposefully availed itself of the privilege of conducting activities in the forum state." Tire Eng'g, 682 F.2d at 302. The purposeful-availment test is applied flexibly on a case-by-case basis and cannot be applied mechanically. See Consulting Eng'rs, 561 F.3d at 278; Tire Eng'g, 682 F.3d at 302; Int'l Shoe, 326 U.S. at 319; Kulko v. Superior Court, 436 U.S. 84, 92 (1978). Rather, the court considers "various nonexclusive factors in seeking to resolve whether a defendant has engaged in [ ] purposeful availment." Consulting Eng'rs, 561 F.3d at 278. The

7

Fourth Circuit has articulated a nonexclusive list of such factors for consideration in the business context:

> (1) Whether the defendant maintains offices or agents in the forum state,
> (2) Whether the defendant owns property in the forum state,
> (3) Whether the defendant reached into the forum state to solicit or initiate business,
> (4) Whether the defendant deliberately engaged in significant or long-term business activities in the forum state,
> (5) Whether the parties contractually agreed that the law of the forum state would govern disputes,
> (6) Whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship,
> (7) The nature, quality and extent of the parties' communications about the business being transacted, and
> (8) Whether the performance of contractual duties was to occur within the forum.

Id. (citations omitted). If the analysis of such factors suggests that "the defendant has availed itself of the privilege of conducting business in the forum, specific jurisdiction exists." Id. In general, these factors support a finding of purposeful availment where the defendant "substantially collaborated with a forum resident and that joint enterprise constituted an integral element of the dispute," but not where "the locus of the parties' interaction was overwhelmingly abroad." Universal Leather, 773 F.3d at 560 (quoting Tire Eng'g, 682 F.3d at 302). If the court finds that "the plaintiff has satisfied this first prong of the test for specific jurisdiction," it moves on to consider the test's second and third prongs. Consulting Eng'rs, 561 F.3d at 278.

The second prong of the constitutional test for specific jurisdiction requires that the defendant's contacts with the forum state form the basis of the suit. See Burger King, 471 U.S. at 472; Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). This analysis is typically straightforward. "Where activity in the forum state is the genesis of the dispute, this prong is easily satisfied." Tire Eng'g, 682 F.3d at 303 (internal quotation marks omitted).

Finally, the third prong requires that the exercise of personal jurisdiction be constitutionally reasonable. This "permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there." Consulting Eng'rs, 561 F.3d at 279. Such factors include:

> (1) The burden on the defendant of litigating in the forum;
> (2) The interest of the forum state in adjudicating the dispute;
> (3) The plaintiff's interest in obtaining convenient and effective relief;
> (4) The shared interest of the states in obtaining efficient resolution of disputes; and
> (5) The interests of the states in furthering substantive social policies.

Id. (citing Burger King, 471 U.S. at 477; World–Wide Volkswagen, 444 U.S. at 292). Accordingly, the court seeks to protect the plaintiff's and the forum state's "substantial interest" in resolving the grievance at hand, while ensuring that "litigation is not 'so gravely difficult and inconvenient' as to place the defendant at a 'severe disadvantage in comparison to his opponent.'" Tire Eng'g, 682 F.3d at 303 (quoting Nolan, 259 F.3d at 217). Based on such factors, the court determines whether the forum at hand is "a relatively sensible choice in terms of promoting judicial efficiency." Nolan, 259 F.3d at 218.

### III. DEFENDANT COX COMMUNICATION'S MOTION TO DISMISS

Defendant Cox filed its Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim on August 24, 2020. (Doc. No. 17). For the reasons that follow, this Court GRANTS Defendant Cox's Motion to Dismiss for Lack of Jurisdiction and DENIES AS MOOT Defendant Cox's Motion to Dismiss for Failure to State a Claim.

In its Memorandum in Support, Defendant Cox argues this Court has neither general personal jurisdiction nor specific personal jurisdiction over it. (Doc. No. 17-1, p. 1). Defendant Cox argues there is no general personal jurisdiction because Defendant Cox is not incorporated in

9

Case 3:20-cv-00392-FDW-DSC   Document 38   Filed 12/03/20   Page 9 of 17

North Carolina, nor does Defendant Cox have its principal place of business in the state. Id. Defendant Cox also argues there is no specific personal jurisdiction because it does not have minimum contacts with North Carolina. Id. Because Plaintiff does not allege or argue general personal jurisdiction, see (Doc. No. 32, pp. 2, 4), the analysis is limited to the issue of specific personal jurisdiction.

### a. Joint Employer Theory of Jurisdiction

Plaintiff contends personal jurisdiction exists because he has sufficiently alleged that Defendant Cox is a joint employer with two other named Defendants: Defendant Quality, which is alleged to be located in North Carolina, and Defendant Infinite, which is alleged to maintain an office in Cary, North Carolina. See (Doc. No. 32, p. 4). Plaintiff acknowledges "the majority of district courts reject joint employer . . . theories of liability as a basis for personal jurisdiction," but points to two recent cases in this District where the court analyzed or accepted the joint employer relationship as a basis for personal jurisdiction. Id. at pp. 4-5. Plaintiff cites to Szulczewski v. Cox Enters., No. 3:19-cv-479-GCM, 2020 WL 1674558 (W.D.N.C. Apr. 6, 2020), where the court analyzed personal jurisdiction based on parent-subsidiary relationship, and Alkins-Nulty v. Danaher Corp., No. 3:20-cv-123-MOC, 2020 WL 1974412 (W.D.N.C. Apr. 24, 2020), where the court denied a motion to dismiss for lack of personal jurisdiction when a parent-subsidiary relationship served as the only basis for jurisdiction.

The Court does not find Plaintiff's joint employer argument persuasive. The only cases offered by Plaintiff in support of his argument are distinguishable because those cases involved personal jurisdiction of a *parent company* when its *wholly owned subsidiary* was subject to general personal jurisdiction in North Carolina. Szulczewski, 2020 WL 1674558, at *1; Alkins-Nulty, 2020 WL 1974412, at *1. Here, Plaintiff does not allege the relationship between Defendants Cox,

Infinite, and Quality is that of a parent-subsidiary. The Complaint alleges more generally the Corporate Defendants are a "single enterprise" and they "jointly determine, share, or allocate responsibility" over a wide range of employment matters. (Doc. No. 1, p. 11). For its part, Defendant Cox asserts it has no ownership or financial interest in Defendant Infinite, and there is no contractual relationship between Defendant Cox and Defendant Quality. (Doc. 17-2, p. 2). Because the cases cited by Plaintiff are distinguishable and because "[c]ourts applying North Carolina law have long held that the parent-subsidiary relationship is not enough, on its own, to impute personal jurisdiction over a parent company," see Szulczewski, 2020 WL 1674558, at *3, Plaintiff has failed to show how a joint employer theory supports personal jurisdiction here.[4]

### b. Specific Personal Jurisdiction

In its Motion to Dismiss, Defendant Cox argues it is not subject to specific personal jurisdiction because Plaintiff has not, and cannot, show that Defendant Cox has minimum contacts with North Carolina. (Doc. No. 17-1, pp. 5-7).

First, the Court considers whether Defendant Cox has purposefully availed itself of North Carolina. In considering the factors set out by the Fourth Circuit in Consulting Engr's, Defendant Cox does not maintain offices in North Carolina and does not own property in the state, and no allegations suggest otherwise. (Doc. No. 17-1, p. 6). The Complaint does not allege Defendant

---

[4] Even if there were a parent-subsidiary relationship between Defendants Cox, Infinite and Quality, the Court doubts that such relationship would be sufficient to support a finding of personal jurisdiction on the relationship alone. The parent-subsidiary relationship theory of personal jurisdiction is a narrow exception to the general rule that a parent may not be subject to personal jurisdiction based on a subsidiary's contacts with the forum state alone. Szulczewski, 2020 WL 1674558, at *3 (citing Jim Meyers & Son, Inc. v. Motion Indus., Inc., 140 F. Supp. 2d 595, 600 (W.D.N.C. 2001)). Indeed, the parent-subsidiary exception applies only when the parent exerts control over the subsidiary to the extent that the parent has "complete domination, not only of finances, but of policy and business practice with respect to the transaction attacked so that the corporation entity as to [that] transaction had at the time no separate mind, will, or existence of its own." Szulczewski, 2020 WL 1674558, at *3 (citing Krauz Indus. Ltd. V. Smith-Blair, Inc., 188 F. Supp. 3d 545, 556-57 (E.D.N.C. 2016)). Here, the Complaint forecloses the possibility of Defendant Cox asserting such control and fails to allege that Defendants Quality and Infinite had no will or existence of their own. Thus, the allegations at bar would not satisfy the exception. See (Doc. No. 1, p. 10) (alleging Defendants Martin and McCollum, neither of whom are associated with Defendant Cox, "made all decisions on a daily basis regarding pay policies and exerted financial and operative control over" Defendants Quality and Infinite).

11

Cox reached into North Carolina to solicit business; rather, it alleges Plaintiff was given a contract for work by Defendant Quality and that Defendants collectively "lured" Plaintiff away from his home in North Carolina. Neither the Complaint nor the record before the Court provides any underlying facts explaining how Defendant Cox specifically reached into North Carolina to solicit him for work and "lure[]" him from his home state. (Doc. No. 1, pp. 5, 18). There are no allegations that Defendant Cox has engaged in long-term business activities in North Carolina, and the forum selection clause—designating Florida as the chosen forum—in the unsigned Installation Contract suggests Defendant Cox never contemplated being haled into court in North Carolina.[5] (Doc. No. 1, p. 6). The Complaint also alleges Plaintiff made in-person contact with Defendant Cox employees at its location in *Virginia*. Id. at p. 6. The Complaint references work done in and contact made with Defendant Cox in *Virginia*, not North Carolina, numerous times. See id. at pp. 6, 9, 18. Indeed, it appears as if the only connection North Carolina has with this suit is that it is Plaintiff's home state, as well as the home state for Defendant Quality, who has not yet appeared in this matter. In short, the Complaint does not sufficiently allege that Defendant Cox has engaged with North Carolina to the extent that it has purposefully availed itself of the privilege of conducting activities in North Carolina.

Because Plaintiff has not made a prima facie showing that Defendant Cox has purposefully availed itself of North Carolina, the Court need not consider the remaining factors in evaluating specific personal jurisdiction. Consulting Eng'rs, 561 F.3d at 278 ("If, and only if, we find that the plaintiff has satisfied this first prong of the test for specific jurisdiction need we move on to a consideration of prongs two and three."). Accordingly, Defendant Cox's Motion to Dismiss for

---

[5] It is not entirely clear whether Defendant Cox or Infinite were parties to the unsigned contract; however, the Complaint alleges Defendant Cox was referred to in the contract as "the System," (Doc. No. 1, p. 6), and Plaintiff asserts he received the Installation Contract related to an existing contract with Defendant Infinite. (Doc. No. 30, p. 4).

12

Lack of Jurisdiction is GRANTED. Defendant Cox's Motion to Dismiss for Failure to State a Claim is DENIED AS MOOT.

## IV. DEFENDANTS INFINITE AND MCCOLLUM'S MOTION TO DISMISS

Defendants Infinite and McCollum have also moved to dismiss for lack of jurisdiction and failure to state a claim. (Docs. Nos. 12, 18). For the reasons that follow, this Court GRANTS Defendants Infinite and McCollum's Motion to Dismiss for Lack of Jurisdiction and DENIES AS MOOT their Motion to Dismiss for Failure to State a Claim.

### a) General Personal Jurisdiction and Joint Employer Theory of Jurisdiction

First, Plaintiff asserts the same joint employer theory for personal jurisdiction over Defendants Infinite and McCollum. As explained above, this Court finds Plaintiff's reliance on the joint employer theory misplaced under the facts alleged here.

Turning to the issue of general jurisdiction, Defendants Infinite and McCollum assert, and Plaintiff does not contest, that they are not subject to general personal jurisdiction here because Defendant Infinite is incorporated in and has its principal place of business in Florida, and Defendant McCollum is domiciled in Florida. (Doc. No. 19, p. 2). Because having one registered office in North Carolina is not sufficient to confer general personal jurisdiction over Defendant Infinite, see Daimler AG v. Bauman, 571 U.S. 117, 139, and because Plaintiff has not argued Defendants Infinite and McCollum are subject to general personal jurisdiction, the Court's analysis is limited to the issue of specific personal jurisdiction.

### b) Specific Personal Jurisdiction

In their Motion to Dismiss for Lack of Jurisdiction, Defendants Infinite and McCollum argue they are not subject to specific personal jurisdiction because Plaintiff "cannot make out a prima facie showing that [Defendants] have purposefully availed themselves of the forum, that

13

Plaintiff's claims arise from [Defendants'] purposefully availing conduct, or that the exercise of jurisdiction would be constitutionally reasonable." (Doc. No. 19, p. 2).

The Court first considers whether Defendants Infinite and McCollum have purposefully availed themselves of North Carolina. The Complaint indicates Defendant Infinite *maintains* an office in North Carolina, but it is not alleged that such office or any other property in North Carolina is *owned* by Defendant Infinite, nor is it alleged that Defendant Infinite has a registered agent in this State. See (Doc. No. 1, p. 3). Likewise, there are no allegations that Defendant McCollum has an office, an agent, or owns property located within North Carolina. These factors weigh against finding that Defendants Infinite and McCollum purposefully availed themselves of North Carolina.

As for whether Defendants Infinite and McCollum reached into North Carolina to solicit business or whether they deliberately engaged in long-term business activity in the forum state, the Complaint only alleges Defendants Infinite and McCollum "recruited Plaintiff" from his home in North Carolina and that Defendant Infinite has an office in Cary, North Carolina. (Doc. No. 1, pp. 3, 6). In his Opposition Motion, Plaintiff provides the additional allegation that Defendant Infinite had previously recruited Plaintiff to complete similar installation work in Charlotte as further support for the relevant factors. (Doc. No. 30, p. 4). Taking these allegations as true, it appears as if Defendants Infinite and McCollum have some business connection with North Carolina such that these factors weigh slightly in favor of finding that they purposefully availed themselves of North Carolina.

The remaining purposeful availment factors weigh against finding Defendants Infinite and McCollum purposefully availed themselves of North Carolina. As with Defendant Cox, the forum selection clause in the unsigned Installation Contract suggests Defendants Infinite and Cox never

14

anticipated litigating a dispute in North Carolina. Moreover, there are no allegations that Plaintiff had in-person contact with either Defendant Infinite or Defendant McCollum in North Carolina other than the general allegation that Defendants collectively "lured" Plaintiff away from his home in North Carolina. Although Plaintiff's Opposition Motion indicates he was contacted by one of Defendant Infinite's employees about a job in Charlotte, North Carolina, (Doc. No. 30, p. 4), this contact is unrelated to the instant case and is not alleged to have been made in-person.

Further, the Complaint's allegations regarding any communication between Plaintiff and Defendants appear to be premised on Plaintiff's alleged communications with Defendant Cox, not with Defendants Infinite and McCollum. See (Doc. No. 1, pp. 6-8). The only allegation specifically addressing communications made between Plaintiff and Defendant Infinite is that "[s]ometimes Plaintiff contacts personnel at Quality Technologies/Infinite Communications, but that person would simply contact Cox." (Doc. No. 1, p. 8). Any such communication of this nature is relatively benign and superficial and accordingly weighs against a finding of purposeful availment. Finally, and most notably to this Court, any work done by Plaintiff on behalf of Defendants Infinite and McCollum is alleged to have occurred in Virginia. It bears repeating that North Carolina is relatively uninvolved with the instant suit other than it being Plaintiff's domicile, as well as the home state for Defendant Quality, who has not made any effort to litigate in this matter as of yet. Accordingly, Plaintiff has not made a prima facie showing that there is specific personal jurisdiction over Defendants Infinite and McCollum, and the Court hereby GRANTS Defendants Infinite and McCollum's Motion to Dismiss for Lack of Jurisdiction (Doc. No. 18). The Court also DENIES AS MOOT Defendants Infinite and McCollum's Motion to Dismiss for Failure to State a Claim (Doc. No. 22).

## V. ORDER TO SHOW CAUSE

Also before the Court is the status of this case as it relates to Defendants Quality and Martin. "A district court possesses the 'inherent power' to dismiss a case *sua sponte* for failure to prosecute[.] . . . [S]uch authority derives from 'the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" Eriline Co., S.A. v. Johnson, 440 F.3d 648, 654 (4th Cir. 2006) (quoting Link v. Wabash R.R. Co., 370 U.S. 626,630-31 (1962)). Furthermore, "aside from the interests of the individual parties in a lawsuit, a district court has an important interest in keeping its docket from becoming clogged with dormant cases . . . ." Erline Co., 440 F.3d at 654. Rule 41(b) of the Federal Rules of Civil Procedure permits an involuntary dismissal for failure to prosecute a case. This could include a party's failure to timely serve the Summons and Complaint, as well as a party's failure to promptly move for entry of default or other relief against parties who have failed to timely respond to service.

Here, the docket appears to demonstrate Plaintiff may have attempted to serve both Defendant Quality and Defendant Martin. Without ruling on the propriety of service as it appears on the record, the Court finds this case to be dormant as to these two Defendants. Both Defendant Quality and Defendant Martin have failed to enter an appearance in this case, and the time for doing so has expired. To the extent Plaintiff has failed to properly serve either of those Defendants, the time for doing so has also expired, and Plaintiff has not filed an appropriate motion seeking additional time for service. Plaintiff is hereby ordered to SHOW CAUSE within fourteen (14) days why the claims against Defendants Quality and Martin should not be dismissed for failure to prosecute. As part of its response to this Show Cause Order, the Court will entertain an appropriate motion(s) under the applicable rules. **Plaintiff is cautioned that failure to adequately and timely**

**respond will result in dismissal of the Complaint against these two Defendants for failure to prosecute.**

## VI. CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS IN PART** and **DENIES IN PART AS MOOT** Defendant Cox's Motion to Dismiss (Doc. No. 17). The Court also **GRANTS** Defendants Infinite and McCollum's Motion to Dismiss for Lack of Jurisdiction (Doc. No. 18) and **DENIES AS MOOT** their Motion to Dismiss for Failure to State a Claim (Doc. No. 22).

Plaintiff is hereby ordered to **SHOW CAUSE within fourteen (14) days** why the claims against Defendants Quality and Martin should not be dismissed for failure to prosecute. **Plaintiff is cautioned that failure to adequately and timely respond will result in dismissal of the Complaint against these two Defendants for failure to prosecute.**

IT IS SO ORDERED.

Signed: December 3, 2020

Frank D. Whitney
United States District Judge